UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR PORTER,

        Petitioner,        Case No. 1:07-cv-781

v.        Honorable Gordon J. Quist

MARY BERGHUIS,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, I recommend that the petition be dismissed for failure to state a claim.

**Discussion**

    I.       Factual allegations

Petitioner Arthur Porter presently is incarcerated with the Michigan Department of Corrections and housed at the Earnest C. Brooks Correctional Facility. On March 12, 2001, he was convicted by a Wayne County jury of assault with intent to commit great bodily harm less than death, MICH. COMP. LAWS § 750.84, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. Sentence was imposed on July 9, 2001, and Petitioner is serving a term of one to ten years for the assault conviction and a consecutive term of two years for possessing a firearm.

Petitioner does not indicate whether he appealed his convictions through all levels of the state court. However, in the present action, Petitioner does not challenge his convictions or sentences. Instead, Petitioner challenges the second and fourth denials of his parole on September 11, 2005 and April 9, 2007, respectively. Petitioner raises five separate claims in his application: (1) Petitioner claims that he was denied his constitutional right to due process under the Fourteenth Amendment when his parole was denied without "substantial and compelling reasons," despite his scoring of a "high probability of parole"; (2) Petitioner alleges he was denied parole in violation of Fifth and Fourteenth Amendments because he was at the same time appealing his conviction; and (3) Petitioner claims that MICH. CT. R. 7.104(D) violates the Due Process Clause because it offers an inadequate appeal process to prisoners who are denied parole without being given "substantial and compelling reasons"; (4) Petitioner asserts that allowing "felons" to appeal the "substantial and compelling reasons" given for not being sentenced within the Sentencing Guidelines, but not allowing "felons" to appeal the "substantial and compelling reasons" given to deny their parole in

the same manner is a violation of the Equal Protection Clause; and (5) Petitioner asserts that having his parole denied "without procedural due process or equal protection is cruel and unusual punishment." (Compl. at 5-6; Br. at 10, 17, 22, 24, 26.)

Petitioner's claims can be divided into four distinct challenges of constitutional magnitude: alleged violations of the Due Process Clause of the Fourteenth Amendment, alleged violations of the Fifth Amendment right against self-incrimination, alleged violations of the Equal Protection Clause of the Fourteenth Amendment, and alleged violations of the Eighth Amendment prohibition on cruel and unusual punishment.

    II.    Discussion

        **A.**    **Due Process Claims**

Petitioner asserts in many of his claims that, unless given adequate "substantial and compelling reasons" for the denial, he is constitutionally entitled to a have his parole granted because he scored a "HIGH PROBABILITY OF PAROLE." Federal habeas relief is available to a state defendant "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). *See also Rose v. Hodges*, 423 U.S. 19, 21 (1975). To sustain such a claim, a petitioner must first establish that parole is a recognized liberty interest, entitled to protection by the Due Process Clause. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *see Bd. of Pardons v. Allen*, 482 U.S. 369, 381 (1987). A prisoner's unilateral expectation, particularly where prison officials retain complete discretion regarding an ultimate determination, does not create a constitutionally protected entitlement or liberty interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Liberty interests may arise from the Constitution itself or from the provisions of state law. *See Hewitt v. Helms*, 459 U.S. 460, 466 (1983). A prisoner has no constitutional or inherent right to be released on parole before the expiration of the prisoner's sentence. *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). The state is therefore free to institute parole systems, but it has no duty to do so. *Id.*; *see Rose v. Haskins*, 388 F.2d 91, 93 (6th Cir. 1968). A prisoner has a liberty interest in the possibility of parole if, but only if, state law creates a legitimate expectation of parole release by the use of mandatory language limiting the discretion of the parole board. *See Bd. of Pardons v. Allen*, 482 U.S. 369, 373-75 (1987). In the absence of a state-created liberty interest, the parole board can deny release on parole for any reason or no reason at all, and the Due Process Clause has no application. *See Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235-36 (6th Cir. 1991).

In numerous cases, this Court has reviewed Michigan law and has found a complete absence of mandatory language or the imposition of substantive predicates restricting the parole board's discretion. Michigan statutes merely define those prisoners not eligible for parole and list factors that the parole board may or may not consider in its decision to grant or deny parole, without directing a specific result. *See* MICH. COMP. LAWS §§ 791.233b, .234, .235. No statutory provision requires parole for any eligible prisoner under any circumstances. The statute makes release on parole expressly discretionary. MICH. COMP. LAWS § 791.234(11).[1]

Relying upon these provisions of Michigan law, the Sixth Circuit Court of Appeals has authoritatively held that the Michigan system does not create a liberty interest in parole. *Sweeton*

---

[1] The Michigan parole statutes have been amended several times in recent years. The statutory citations contained above are to the present codification of the parole law. None of the recent amendments are material to the issues now before the Court. Release on parole has always been discretionary under Michigan law.

*v. Brown*, 27 F.3d 1162, 1164-165 (6th Cir. 1994) (en banc). In unpublished decisions following *Sweeton*, the Sixth Circuit has repeatedly held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Mich. Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). Further, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Petitioner has served his maximum sentence, he has no reasonable expectation of liberty. In the absence of a liberty interest, even an allegation of arbitrary or capricious denial of release on parole states no federal claim. *See Haynes*, 1990 WL 41025, at *1. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's failure or refusal to consider Petitioner for parole, therefore, implicates no federal right. In the absence of a liberty interest, Petitioner fails to state a claim for a violation of his procedural due process rights.

Furthermore, the presence of specific parole guidelines does not lead to the conclusion that parole release is mandated upon reaching a "high probability of parole." As stated by the Court, a state's scheme may be specific or general in defining the factors to be considered by the parole authority without necessarily mandating parole. *Greenholtz*, 442 U.S. at 7-8. At the time that

- 5 -

*Sweeton* was decided, there were statutory factors to be considered by the parole board. *See Sweeton*, 27 F.3d at 1165 n.1 (noting that MICH. COMP. LAWS § 791.235 listed " a large number of factors to be taken into account by the board.") Although the current parole guidelines may be more detailed than the former statutory provision, they are still nothing more than factors that are considered by the board in assessing whether parole is appropriate. The fact that the Michigan Parole Board must follow their own procedural statutes and regulations regarding parole does not raise an issue of federal due process. *Id.* at 1165. This is particularly so in light of the fact that the guidelines do not state that the prisoner "must" or "shall" be paroled if the prisoner scores in a certain category; rather, the guidelines still speak in terms of probability, thus leaving the ultimate determination of parole release with the parole board. In an unpublished decision, the Sixth Circuit has found that where the ultimate decision regarding parole rests with the parole board, a prisoner has no protectable interest in a system which determined a "grid score" for when he would be eligible for parole. *Moran*, 1996 WL 304344, at *2; *accord Aqeel v. Dallman*, No. 90-3459, 1991 WL 7102, at *1 (6th Cir. Jan. 25, 1991) (where statute and guidelines place parole decision in hands of the board, there is no liberty interest). Because Petitioner has no liberty interest at stake, his due process claims must fail.

### B.     Fifth Amendment

Petitioner alleges that his right against self-incrimination was violated when he was denied parole as a result of his refusal to admit guilt to the parole board and appealing his conviction. (Br. at 20.) This assertion is without merit.

It is well-settled that the Fifth Amendment right against self-incrimination is not implicated by the alleged pressure on a prisoner to admit, in order to improve his chances for parole, that he committed the crime(s) for which he is incarcerated. *See Hawkins v. Morse,* No. 98-2062,

1999 WL 1023780, at *2 (6th Cir. Nov. 4, 1999) (citing *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 285-88 (1998)). *See also Rice v. Mich. Parole Bd.*, No. 1:05-cv-549, 2005 WL 2297463, at *3-4 (W.D. Mich. Sept. 21, 2005) (Fifth Amendment extends only to proceedings in which answers might incriminate the individual in *future* criminal proceedings; therefore refusal to admit to crimes of which prisoner had already been convicted did not implicate Fifth Amendment) (emphasis in original). Therefore, the Michigan Parole Board's consideration of Petitioner's remorse (or lack thereof) for the crimes of which he had been convicted in 2002 did not violate his Fifth Amendment rights.

### C.     Equal Protection

Petitioner asserts that allowing "felons" to appeal the "substantial and compelling reasons" given for not being sentenced within the Sentencing Guidelines, but not allowing "felons" to appeal the "substantial and compelling reasons" given to deny their parole in the same manner is a violation of the Equal Protection Clause. (Br. at 24.) Essentially, Petitioner argues that the phrase "substantial and compelling reasons" is a legal term of art. Therefore, prisoners who score a high probability of parole should be allowed to directly appeal the denial of their parole to the Michigan Court of Appeals since inmates who are sentenced outside of the guidelines are allowed to appeal the validity of the "substantial and compelling reasons" given by the sentencing court. Petitioner argues that the failure to allow such a direct appeal for parole denial is a violation of the Equal Protection Clause.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST., amend XIV; *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). The Equal Protection

Clause does not forbid all classifications, but simply prevents governmental decision makers from treating differently persons who are similarly situated in all relevant respects. *Cleburne*, 473 U.S. at 439; *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920); *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 574 (6th Cir. 2002) (the Clause "protects against arbitrary classifications, and requires that similarly situated persons be treated equally.").

"Strict scrutiny of an alleged equal protection violation is only employed if the classification at issue discriminates on the basis of a suspect criterion or impinges upon a fundamental right." *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000). The Michigan legislation does not implicate a fundamental right because there is no constitutional right to release on parole. *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979); *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994). In addition, prisoners are not a suspect class. *Hadix*, 230 F.3d at 843; *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997); *see also Zehner v. Trigg*, 133 F.3d 459, 463 (7th Cir. 1997) (dismissing as "completely unsupported" the idea that prisoners are a suspect class).

Thus, in order to establish an equal protection violation, Petitioner must show that the Michigan scheme differentiates between similarly situated persons and is not rationally related to any conceivable legitimate legislative purpose. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Hadix*, 230 F.3d at 843. Under this standard,

> the statute will be afforded a strong presumption of validity and must be upheld as long as "there is a rational relationship between the disparity of treatment and some legitimate government purpose." *Heller v. Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 2643, 125 L. Ed. 2d 257 (1993). The government has no obligation to produce evidence to support the rationality of its statutory classifications and may rely entirely on rational speculation unsupported by any evidence or empirical data. *See FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S. Ct. 2096, 2098, 124 L. Ed. 2d 211 (1993). The legislature is not even required to articulate any purpose or

> rationale in support of its legislation. *See Nordlinger v. Hahn*, 505 U.S. 1, 15, 112 S. Ct. 2326, 2334, 120 L. Ed. 2d 1, (1992). Consequently, plaintiffs bear the heavy burden of "negativ[ing] every conceivable basis which might support [the legislation], . . . whether or not the basis has a foundation in the record." *Heller*, 509 U.S. at 320, 113 S. Ct. at 2643.

*Hadix*, 230 F.3d at 843. Even if felons appealing the reasons given by a sentencing court for departing from the sentencing guidelines were deemed "similarly situated" to prisoners or felons who scored a "high probability of parole" and were denied parole, Petitioner's equal protection claim fails because the classification survives rational basis review.

> [U]nder rational basis review, . . . the classification need not be the most narrowly tailored means available to achieve the desired end. . . . The statute need not be the best possible reaction to the perception, nor does the perception itself need to be heavily buttressed by evidentiary support. It is enough that the perceived problem is not obviously implausible and the solution is rationally suited to address that problem.

*Zehner*, 133 F.3d at 463 (rejecting prisoners' argument that 42 U.S.C. § 1997e(e) violates equal protection by limiting relief which may be sought by prisoners). Where there are "plausible reasons" for the legislature's action, a court's inquiry is at an end; "[i]t is, of course, 'constitutionally irrelevant whether this reasoning in fact underlay the legislative decision[.]'" *U.S. R.R. Bd. v. Fritz*, 449 U.S. 166, 179 (1980) (quoting *Flemming v. Nestor*, 363 U.S. 603, 612 (1960)). In addition, the Court's determination in this case must be made in light of the constant admonition by the Supreme Court that the problems of prison administration are peculiarly for resolution by prison authorities and their resolution should be accorded deference by the courts. *See Washington v. Harper*, 494 U.S. 210, 224 (1990); *Turner v. Safley*, 482 U.S. 78, 84-96 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jones v. N.C. Prisoners' Labor Union*, 433 U.S. 119, 125-26 (1977).

"'The purpose of parole is to keep a prisoner in legal custody while permitting him to live beyond the prison enclosure so that he may have an opportunity to show that he can refrain from committing crime.'" *People v. Gregorczyk*, 443 N.W.2d 816, 821 (Mich. Ct. App. 1989) (citation omitted). Protection of public safety is a stated purpose of Michigan's parole statutes. *Hopkins v. Mich. Parole Bd.*, 604 N.W.2d 686, 689 (Mich. Ct. App. 1999) ("First and foremost, [the parole board] may not grant a prisoner liberty on parole until it 'has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety'") (quoting MICH. COMP. LAWS § 791.233(1)(a)). Preventing the early release of potentially violent inmates is a legitimate governmental interest. *See Wottlin v. Fleming*, 136 F.3d 1032, 1037 (5th Cir. 1998) (affirming rejection of equal protection challenge raised by § 2241 petitioner; Bureau of Prisons rule which provided that inmates having prior convictions for homicide, forcible rape, robbery, or aggravated assault were not eligible for early release was "rationally related to the legitimate governmental interest of preventing the early release of potentially violent inmates").

It is clearly rational to allow prisoners to appeal the one-time imposition of their sentence directly to the Michigan Court of Appeals, but not allow prisoners who are denied parole and the consequent early release from an already existing sentence the same appeal process. Parole laws represent "the State's sensitive and difficult effort to encourage for its prisoners constructive future citizenship while avoiding the danger of releasing them prematurely upon society." *McGinnis v. Royster*, 410 U.S. 263, 269-70 (1973). Allowing prisoners to be reviewed for parole at specified intervals, while prohibiting them from appealing adverse decisions, is a rational attempt to balance these concerns. The State of Michigan could rationally intend the limitation on appeal rights to

provide a counter-balance to a prisoner's obvious but understandable incentive to litigate the issue of parole, as well as to protect the state treasury, from which funds will have to be expended in responding to appeals of parole denials. *See Hadix*, 230 F.3d at 845 (holding that § 803(d)(3) of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(d)(3), did not violate plaintiff's equal protection rights). Similarly, it is not irrational "for the state to avoid the expense and inconvenience of formal, adversarial type parole hearings." *Johnson*, 110 F.3d at 307 n.11. "The States must have due flexibility in formulating parole procedures and addressing problems associated with confinement and release." *Garner v. Jones*, 529 U.S. 244, 251 (2000). "'The problems of government are practical ones and may justify, if they do not require, rough accommodations–illogical, it may be, and unscientific.'" *McGinnis v. Royster*, 410 U.S. 263, 270 (1973) (quoting *Metropolis Theatre Co. v. City of Chicago*, 228 U.S. 61, 69-70 (1913)). Accordingly, Petitioner's claims that his Equal Protection rights have been violated are without merit.

### D.     Eighth Amendment

Petitioner asserts that having his parole denied is cruel and unusual punishment in violation of the Eighth Amendment. (Br. at 26.) The Eighth Amendment to the United States Constitution, applicable to the states through the Due Process Clause of the Fourteenth Amendment, protects against cruel and unusual punishments. *See* U.S. CONST., amend. VIII; *Harmelin v. Michigan*, 501 U.S. 957, 962 (1991). The Eighth Amendment, however, does not require strict proportionality between a crime and its punishment. *Harmelin*, 501 U.S. at 965; *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583. A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual

punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir.2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).

In the instant case, the Court notes at the outset that the Eighth Amendment claim is factually baseless. The parole board did not issue a sentence. Rather, the Michigan Parole Board merely declined to extend parole to Petitioner after he became eligible. *See Preston v. Hughes*, No. 97-6507, 1999 WL 107970, *2 (6th Cir. Feb. 10, 1999). Moreover, assuming the Michigan Parole Board's decision may be considered the imposition of punishment, Petitioner's sentence falls within the maximum allowed by statute. Therefore, Petitioner's sentence does not run afoul of the Eighth Amendment's ban of cruel and unusual punishment. *Austin*, 213 F.3d at 302.

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be summarily dismissed pursuant to Rule 4 for failure to state a claim. I further recommend that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

Dated: November 8, 2007           /s/ Hugh W. Brenneman, Jr.
                                  HUGH W. BRENNEMAN, JR.
                                  United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).