UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ARTHUR PORTER,

    Petitioner,

v.                                             Case No. 1:07-cv-781
                                                Hon. Gordon J. Quist

MARY BERGHUIS,

    Respondent.

_____/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition pursuant to 28 U.S.C. § 2254, seeking habeas relief from decision of the Parole Board of the Michigan Department of Corrections (MDOC), which denied his release on parole.[1] The court previously dismissed all of petitioner's claims for habeas relief except for a First Amendment retaliation claim relating to his second and fourth denials of parole.[2] *See* docket nos. 5 and 6. This

---

[1] The court notes that MDOC records sometimes refer to the Parole Board as "PB" and petitioner as "P."

[2] This claim arose from petitioner's second ground, which stated as follows:

> The 4th parole denial extended my time until 9/08/08 with the reason that greatly varies again.
>
> The 4th denial and all the previous [denials] are "punishment" for accessing the courts to appeal my conviction.
>
> At the 2nd parole denial (attacked and preserved in Writ) the Parole member said: "The Parole Board is not going to parole you as long as you are appealing your conviction."

*See* Petition at ¶ 12.

matter is now before the court on the petition, as well as petitioner's second and third motions for summary judgment (docket nos. 49 and 59).

### I. Background

### A. Petitioner's conviction and direct appeal

On March 12, 2001, petitioner was convicted by a Wayne County jury of assault with intent to commit great bodily harm less than death, M.C.L. § 750.84, and possession of a firearm during the commission of a felony (felony firearm), M.C.L. § 750.227b. On July 9, 2001, petitioner was sentenced to a term of one to ten years for the assault conviction and a consecutive term of two years for the felony firearm conviction.

The Michigan Court of Appeals affirmed petitioner's conviction on June 10, 2003. *See People v. Porter*, No. 237040, 2003 WL 21350364 (Mich. App. June 10, 2003). Of particular relevance is that court's rejection of petitioner's claim of insufficient evidence and self defense:

> Here, when viewed in a light most favorable to the prosecution, the evidence indicates the following circumstances surrounding the conduct for which defendant was convicted. Two days before the shooting incident, Tremaine Portis went to the house of his neighbor, Tanganyika Shack, in search of his friend John Johnson, also a neighbor. He found Johnson and Shack discussing the matter of ten dollars that Shack allegedly owed Johnson. Defendant, who was Shack's boyfriend, came into the living room and told Portis and Johnson not to argue in his girlfriend's house. As Portis and Johnson were leaving the house to go to the local store, Shack told them that she would pay Johnson when the two men returned from the store. Afterward, the two men returned to Shack's house. Johnson stood on the porch and argued with Shack, who was in the house. Portis and defendant were standing on the driveway. When Portis noticed that defendant had a gun, he told defendant that he would remove Johnson from the premises and would pay Johnson the ten dollars so that Johnson would not return to the house. When Johnson learned that defendant had a gun, he stopped arguing with Shack and he walked away from the house toward the street. Meanwhile, Portis was trying to calm defendant. However, defendant pulled the gun out of his pocket, said "you have a problem with me John," and shot at Johnson's direction. Johnson was not injured.

2

Two days later, Portis encountered Shack at the neighborhood store. It is unclear from the record what exactly was discussed between the two. However, Shack called defendant and asked him to pick her up from the store because she was afraid. Portis left the store and was walking home with Johnson's brother, Terrance Daniels, when defendant's car pulled up a few feet in front of them, braked and came to a stop. Shack was in the front passenger side of the car. Defendant jumped out of the vehicle and aggressively asked whether Portis was still "running" his mouth. Portis handed the bag of groceries he was carrying to Daniels.

According to defendant, he stopped behind two cars at a stop sign and Shack told him that Portis was "rushing" their car. Defendant claimed that he could not drive forward or in reverse. Defendant asserted that he feared for his life because Portis had, in their previous encounter, threatened to kill defendant. Defendant left the car to face Portis. Defendant testified that he had a gun on him at the time of the shooting.

It was undisputed that the two men were arguing a few feet behind the car. Defendant placed his left hand on Portis' shoulder and pulled out a gun. Defendant testified that the gun went off, but it discharged to the ground. He denied that Portis was shot. Portis, on the other hand, testified that he heard a loud bang and felt something poke into his abdomen. Daniels fled, defendant went back to his car and drove away and Portis ran home, holding his abdominal area with the realization that he had just been shot.

Given the nature of the previous encounter between defendant and Johnson when defendant shot at Johnson, considering the conflicting testimony with respect to defendant's conduct at the time of the shooting, and given defendant's own testimony that Shack had no reason to shoot Portis,we conclude that the trial court could have found beyond a reasonable doubt that defendant acted with the requisite intent to cause Portis great bodily harm. Although defendant denied ever intending to hurt Portis and purportedly fired a warning shot to the ground, we will not invade the province of the factfinder and assess credibility anew when considering the proofs in a light most favorable to the prosecution. *People v. Terry*, 224 Mich.App 447, 452; 569 NW2d 641 (1997). The evidence at trial was sufficient to support defendant's conviction.

*People v. Porter*, 2003 WL 21350364 at *1-2.

In rejecting petitioner's self-defense claim, the Michigan Court of Appeals stated in pertinent part as follows:

Defendant contends that the trial court erroneously believed that, to invoke the law of self-defense, a defendant should have seen a gun on the victim. Defendant

> argues that he was only required to show that he reasonable believed that he was in danger. We disagree. The evidence in this case showed that defendant did not attempt to retreat from his confrontation with Portis. Therefore, defendant was required to offer uncontested evidence that he was the victim of "a sudden, fierce, and violent attack" or that he reasonably believed that Portis was "about to use a deadly weapon." [Citation omitted.] Defendant's evidence in this case was contested, and there was nothing to indicate that defendant was a victim of "a sudden, fierce, and violent attack." This case also presented a witness credibility contest. Defendant testified that he was justified in his claim of self-defense because Portis appeared to be reaching for a gun. Defendant admitted that he had a gun and that the gun fired one shot. Portis and Daniels both testified that Portis did not have a gun and that defendant was the aggressor. Questions of credibility and intent should be left to the trier of fact and will not be resolved anew by this Court. *People v. Avant*, 235 Mich.App 499, 506; 597 NW2d 864 (1999). It is clear from the record that the trial court was searching for proof that would justify a finding of the necessary elements for the law of self-defense. We conclude that the court properly determined that defendant failed to satisfy those elements.

*Id.* at *3. The Michigan Supreme Court denied petitioner's application for leave to appeal on December 30, 2003. *People v. Porter*, 469 Mich. 988, 673 N.W.2d 761 (Dec. 30, 2003). After his convictions, the Parole Board denied petitioner parole on seven occasions. In the present action, petitioner does not challenge the merits of his convictions. Rather, he challenges only the second and fourth denials of his parole.[3]

### B. The Parole Board's action

### 1. First denial of parole

The Parole Board first denied petition parole on January 21, 2004. Parole Trans. I at pp. 35-37 (docket no. 26). The Parole Board listed the following reasons in support of its action:

**Crime and Criminal Behavior**
    **The assaultive crime:**
    Involved the touching or discharge of a weapon
    Involved a family member or acquaintance

---

[3] While petitioner states that the second and fourth denials occurred on September 11, 2005 and April 9, 2007, respectively, the record reflects that the Parole Board denied parole on June 6, 2005 and April 4, 2007.

4

       Resulted in injury

       **Regarding the crime, it is our belief:**
       Prisoner fails to comprehend the seriousness of crime
       Prisoner refuses to accept responsibility
       Prisoner expresses little/no remorse

       **The prisoner has a criminal history:**
       Of violent misdemeanors

       **Regarding criminal history, it is our belief the prisoner:**
       Provides excuses for past criminal behavior
       Denies involvement in some offenses

**Correctional Adjustment**
       **The prisoner's prior post conviction corrections history includes:**
       Commission of crime while under supervision
       Assaultive behavior on parole/probation
       A history of probation failure

       **Regarding the prior post conviction sanctions, it is our belief the prisoner:**
       Fails to understand correlation between failure(s) and risk
       Provides excuses for failures

**Personal History**
       **The prisoner has a history of substance abuse which:**
       Is of a polysubstance nature
       Is of long standing duration

       **Regarding personal history, it is our belief that the prisoner:**
       Has failed to provide a parole plan which would reduce the likelihood of additional criminal behavior

Parole Trans. at pp. 35-36.

       The MDOC parole guidelines score sheet indicated that petitioner would have a high probability of parole. *Id.* at p. 41. However, the Parole Board listed the following substantial and compelling reasons for guideline departure:

> P was not able to demonstrate any insight into his assaultive offense during his parole PB interview, P is viewed as a risk w/o this needed insight, remorse and empathy for his victim.

*Id.* at p. 35.  The Parole Board determined that it "lacks reasonable assurance that the prisoner will not become a menace to society or to the public safety and denial of parole is warranted."  *Id.* at p. 35.  Accordingly, the Parole Board denied petitioner parole for 18 months, with a reconsideration date of September 10, 2005.  *Id.*

As part of its decision, the Parole Board gave petitioner "recommendations for corrective action which may facilitate release" as follows:

> Demonstrate responsible behavior by earning positive reports in any programs you may be involved in
>
> Demonstrate responsible behavior by avoiding situations which result in misconduct violations
>
> Demonstrate responsible behavior by earning good block or staff reports of conduct in the housing unit

*Id.* at p. 36.

### 2. Second denial of parole

The Parole Board reconsidered petitioner's eligibility for parole approximately three months before the original reconsideration date.  Petitioner's second denial of parole occurred on June 6, 2005.  Parole Trans. at pp. 25-26.  The Parole Board listed the following reasons in support of its action:

> **<u>Crime and Criminal Behavior</u>**
> **The assaultive crime:**
> Showed intent to permanently injure
> Resulted in injury
> Involved the touching or discharge of a weapon
>
> **Regarding the crime, it is our belief:**
> Prisoner denies the offense
>
> **The prisoner has a criminal history:**
> Of violent misdemeanors

**Personal History**
    **The prisoner has a history of substance abuse which:**
    Is of long standing duration

Parole Trans. at p. 25.

The MDOC parole guidelines score sheet indicated that petitioner had a high probability of parole. *Id.* at p. 30. However, the Parole Board listed the following substantial and compelling reasons for guideline departure:

> P was involved in a cold-blooded shooting of another individual. PB does not have evidence that P has gained insight into his assaultive behavior and therefore, the risk to the public remains.

*Id.* The Parole Board determined that it "lacks reasonable assurance that the prisoner will not become a menace to society or to the public safety and denial of parole is warranted." *Id.* at p. 25. Accordingly, the Parole Board denied petitioner parole for 18 months, with a reconsideration date of March 11, 2007. *Id.* As part of its decision, the Parole Board gave petitioner "recommendations for corrective action which may facilitate release" as follows:

> Demonstrate responsible behavior by earning positive reports in any programs you may be involved in
>
> Demonstrate leadership qualities by participation in department sanctioned activities
>
> Provide additional demonstration of positive prison behavior during the period of the continuance

*Id.* at p. 26.

### 3. Third denial of parole

The Parole Board reconsidered petitioner's eligibility for parole (approximately one year before the original reconsideration date) and denied parole on March 4, 2006. Parole Trans. at pp. 19-20. The Parole Board listed the following reasons in support of its action:

7

### Crime and Criminal Behavior
**The assaultive crime:**
Involved the touching or discharge of a weapon
Resulted in injury

**Regarding the crime, it is our belief:**
Prisoner expresses little/no remorse
Prisoner minimizes responsibility

**The prisoner has a criminal history:**
Of violent misdemeanors

**Regarding criminal history, it is our belief the prisoner:**
Provides excuses for past criminal behavior

### Personal History
**The prisoner has a history of substance abuse which:**
Is of long standing duration

Parole Trans. at pp. 19-20.

The MDOC parole guidelines score sheet indicated that petitioner would have a high probability of parole. *Id.* at p. 24. The Parole Board listed the following substantial and compelling reasons for guideline departure:

> During the PBI P impressed as being the real V in this case, [d]espite credible evidence to the contrary he denies shooting the V but admits to drawing the weapon on him twice, discharging it once, this is reckless behavor [sic] & does not support positive PD [sic] action

*Id.* at p. 19. The Parole Board determined that it "lacks reasonable assurance that the prisoner will not become a menace to society or to the public safety and denial of parole is warranted." *Id.* at p. 19. Accordingly, the Parole Board denied petitioner parole for 18 months, with a reconsideration date of March 11, 2007. *Id.*

As part of its decision, the Parole Board gave petitioner "recommendations for corrective action which may facilitate release" as follows:

> Demonstrate responsible behavior by earning positive reports in any programs you may be involved in
>
> Obtain screening by psychological staff to determine the appropriateness of group therapy to reduce the risk to society
>
> Provide additional demonstration of positive prison behavior during the period of the continuance

*Id.* at p. 20.

### 4. Fourth denial of parole

The Parole Board reconsidered petitioner's eligibility for parole and issued the fourth denial of parole on April 4, 2007. Parole Trans. at pp. 11-12. The Parole Board listed the following reasons in support of its action:

> **Crime and Criminal Behavior**
> **The assaultive crime:**
> Resulted in injury
> Involved the touching or discharge of a weapon
>
> **The prisoner has a criminal history:**
> Of violent misdemeanors
>
> **Personal History**
> **The prisoner has a history of substance abuse which:**
> Is of long standing duration

Parole Trans. at p. 11.

The MDOC parole guidelines score sheet indicated that petitioner had a high probability of parole. *Id.* at p. 16. However, the Parole Board listed the following substantial and compelling reasons for guideline departure:

> P did not want to discuss his involvement in this offense, added that this case is still under appeal, [s]ubsequently there is no way that P's risk can be assessed which means that risk still remains high, this does not support positive Bd action[.]

9

*Id.* The Parole Board determined that it "lacks reasonable assurance that the prisoner will not become a menace to society or to the public safety and denial of parole is warranted." *Id.* at p. 11. Accordingly, the Parole Board denied petitioner parole for 18 months, with a reconsideration date of September 8, 2008. *Id.*

As part of its decision, the Parole Board gave the following recommendations for corrective action which may facilitate release:

> Identify and develop community resources to address special needs
> identified through group therapy

*Id.* at p. 12.

### 5. Petitioner's subsequent denials of parole

The Parole Board issued its fifth denial of parole on April 18, 2008. *Id.* at p. 3. While the guidelines indicated that petitioner had a high probability of parole, the Parole Board departed from the guidelines for the following reason:

> P waived the PB interview and therefore the PB is unable to determine if P has gained the necessary insight into his criminal behavior. P is still considered a risk to the general public safety.

*Id.*

The Parole Board denied petitioner parole for the sixth time on June 5, 2009. Parole Board Trans. II at p. 14 (docket no. 55). Although the guidelines indicated that petitioner had a high probability of parole, the Parole Board departed from the guidelines, listing the following reasons:

> P denies all guilt in this offense. During the PBI he refused to discuss the crime, expressed no remorse, failed to accept responsibility for his actions and has not participated in programming that could reduce his risk of future violence.

*Id.*

10

In its most recent decision, the Parole Board denied petitioner parole for the seventh time on January 26, 2010. *Id.* at p. 3. Although the guidelines indicated that petitioner had a high probability of parole, the Parole Board departed from the guidelines for the following reasons:

> P refused his PBI, his file was reviewed, no basis for positive Bd action could be established.

*Id.*

### C. Petitioner's collateral attacks

#### 1. Federal challenges to his convictions pursuant to 28 U.S.C. § 2254

On April 12, 2004, a few months after his first parole denial, Porter filed a petition for writ of habeas corpus in the Eastern District of Michigan to collaterally attack his convictions. *See Porter v. Berghuis*, 2:04-cv-71350-AC-SDP (E.D. Mich.) (docket no. 1). That court denied the habeas petition and dismissed the action on August 23, 2005. *Id.* (Opinion and Order) (docket no. 28). The Sixth Circuit affirmed the district court's dismissal on August 3, 2006. *See Porter v. Berghuis*, No. 05-2531 (6th Cir. Aug. 3, 2006). The United States Supreme Court denied Porter's petition for a writ of certiorari on November 3, 2008. *See Porter v. Berghuis*, 129 S. Ct. 504 (Nov. 3, 2008). On January 16, 2009, the Sixth Circuit denied petitioner's motion for leave to file a second or successive petition for a writ of habeas corpus under 28 U.S.C. §§ 2244 and 2254. *See In re Arthur Porter*, No. 08-2053 (Order) (6th Cir. Jan. 16, 2009).

#### 2. Petitioner's state habeas corpus action regarding the second denial of parole

On July 18, 2005, approximately one month after the second denial of parole, petitioner filed a complaint for writ of habeas corpus in the Muskegon County Circuit Court. *See* docket no. 21. That court observed that petitioner sought state habeas relief "as to the **second** denial

11

of parole only." *Porter v. Michigan Department of Corrections*, No. 05-43980-AH (Opinion and Order denying habeas relief) (Muskegon Co. Cir. Ct. Feb. 15, 2006) (emphasis in original) (docket no. 22). The issue before the court was whether petitioner was entitled to habeas relief for denial of parole, because "the parole board violated his right against self-incrimination because it based its decision on petitioner's refusal to admit guilt." *Id.* at p. 3. The court rejected petitioner's Fifth Amendment claim that an admission of guilt before the Parole Board would have jeopardized his ability to challenge the underlying conviction in his federal habeas action. *Id.* at pp. 3-4. Accordingly, that court denied habeas relief on February 15, 2006. *Id.* at pp. 4-5.

Petitioner appealed this decision to the Michigan Court of Appeals, which rejected petitioner's filings (i.e., an "application for superintending control" and "emergency habeas appeal") and directed him to re-file the pleadings with a partial filing fee of $71.00 within 21 days of the certification of the order. *Porter v. Department of Corrections*, No. 268979 (Order) (Mich. App. March 22, 2006) (docket no. 22). There is no record that petitioner re-filed his pleadings as directed or appealed this order to the Michigan Supreme Court. *See* Corbin R. Davis Aff. (docket no. 23).

### 3. State habeas corpus action filed in the Michigan Court of Appeals

On or about June 20, 2006, Porter filed a civil action for writ of habeas corpus directly with the Michigan Court of Appeals. *Arthur Porter v. Department of Corrections*, No. 271239 (Mich. App.) (docket no. 24). In this second state habeas action, petitioner alleged: that his minimum term of imprisonment ended on March 11, 2004; that he was scored a high probability of parole; that he was denied parole for reasons that are not "substantial and compelling reasons" under M.C.L. § 791.233e(1) and (6); that at the first and second interviews, petitioner was told that he was appealing the convictions, he was not sorry, and that the Parole Board was not going to parole him

12

as long as he was appealing his case. *See* Habeas Complaint at ¶¶ 6-17 (docket no. 24). The Michigan Court of Appeals denied the habeas complaint. *Arthur Porter*, No. 271239 (Order) (Oct. 16, 2006) (docket no. 24). The Michigan Supreme Court denied Porter's application for leave to appeal. *Arthur Porter*, No. 132457 (Order) (Feb. 27, 2007) (docket no. 25).

### 4. Other actions in federal court

On February 18, 2004, petitioner filed a habeas corpus action in the Eastern District contesting his denial of parole on various grounds (i.e., substantive due process, procedural due process, equal protection clause and abuse of discretion). The action was transferred to this district and dismissed on May 3, 2004. *See Porter v. Mary Berghuis*, 1:04-cv-193 (W. D. Mich.) (Opinion and Judgment) (docket nos. 18 and 19). Petitioner also filed a separate prisoner civil rights action against the Parole Board, which this court dismissed for failure to state a claim. *See Porter v. Jennifer Granholm et al.*, 1:08-cv-429 (Order and Judgment) (W.D. Mich. Oct. 28, 2009) (docket nos. 23 and 24).

### D. The present habeas action

Petitioner filed this habeas action on August 13, 2007. Petition (docket no. 1). This matter is now before the court on petitioner's claim that his second and fourth parole denials were in retaliation for filing appeals in violation of the First Amendment.

## II. Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254(a), which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in

13

federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). However, because Michigan does not provide a corrective process for a denial of parole, petitioner's failure to exhaust prior to filing this habeas action is excusable under § 2254(b)(1)(B)(i) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . there is an absence of available State corrective process"). *See Jackson v. Jamrog*, 411 F.3d 615, 618 (6th Cir. 2005). Accordingly, the court will review petitioner's claim as presented to this court.

### III. Petitioner's motions for summary judgment

After the court denied his first motion for summary judgment, petitioner filed two additional motions seeking summary judgment. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Petitioner's second motion for summary judgment (docket no. 49) includes legal arguments and various exhibits, including Parole Board records and affidavits from petitioner and his mother. The third motion for summary judgment (docket no. 59) is little more than a cover letter advising this court that he continues to file motions and/or legal actions contesting his convictions and/or incarceration.[4] Petitioner does not identify the nature of his litigation activities other than to suggest that he filed a motion in the state court pursuant to MCR 6.500 and that he is appealing in

---

[4] The court notes that the third motion for summary judgment is not accompanied by a supporting brief as required by W.D. Mich. LCivR 7.1(a). For this reason alone, the motion should be denied.

the state appellate courts. *See* docket no. 59-2. Because the court is reviewing the entire record and addressing the habeas petition on the merits, the preparation of a separate report and recommendation addressing petitioner's motions for summary judgment would serve little purpose other than to expend additional judicial resources on these motions, which have been subsumed by the present report and recommendation. Accordingly, the court will view petitioner's motions for summary judgment, along with the supporting brief and exhibits, as additional material in support of petitioner's remaining retaliation claim.

### IV. Discussion

Federal habeas relief is available to a state defendant "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A prisoner has no constitutional or inherent right to be released on parole before the expiration of the prisoner's sentence. *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). The state is therefore free to institute parole systems, but it has no duty to do so. *Id.*; *see Rose v. Haskins*, 388 F.2d 91, 93 (6th Cir. 1968). A prisoner's unilateral expectation, particularly where prison officials retain complete discretion regarding an ultimate determination, does not create a constitutionally protected entitlement or liberty interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). In the absence of a state-created liberty interest, the parole board can deny release on parole for any reason or no reason at all. *See Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235-36 (6th Cir. 1991).

Michigan courts describe parole as "a conditional release." *People v. Gregorczyk*, 178 Mich. App. 1, 11, 443 N.W.2d 816 (1989), quoting *In re Eddinger*, 236 Mich. 668, 670, 211 N.W. 54 (1926). "The purpose of parole is to keep a prisoner in legal custody while permitting him

to live beyond the prison enclosure so that he may have an opportunity to show that he can refrain from committing crime." *Id.* Under Michigan law, "[a] prisoner shall not be given liberty on parole until the board has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety." M.C.L. § 791.233(1)(a). In this regard, the United States Supreme Court acknowledges that "[a]cceptance of responsibility is the beginning of rehabilitation." *McKune v. Lile*, 536 U.S. 24, 47 (2002).

The only issue before this court is whether the Parole Board's second and fourth denials of parole constituted retaliation against petitioner for engaging in activities protected by the First Amendment. The court framed the legal standard for this type of retaliation claim as follows:

> To succeed on his claim, Petitioner must show: (1) that he engaged in protected activity; (2) that an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that the adverse action was motivated, at least in part, by Petitioner's protected activity. [*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).] By appealing his conviction, Petitioner was engaged in protected activity. *See Bell v. Ohio Adult Parole Auth.*, 23 Fed. App'x 478, 479 (6th Cir. 2001). Moreover, the denial of parole is an adverse action that would deter a person of ordinary firmness from engaging in the protected conduct. *Rauser v. Horn*, 241 F.3d 330, 331 (3rd Cir. 2001). Therefore, the dispositive issue is whether Petitioner's denial of parole was motivated, at least in part, by him appealing his conviction in court. At this stage in the litigation, the only evidence of intent is Petitioner's claim that the board members told him he would never get parole so long as he was appealing his conviction. While further evidence may rebut the causal connection, the Court cannot say at this stage of the litigation that Petitioner will be unable to establish that the adverse action was motivated, at least in part, by his protected activity.

Opinion at pp. 4-5 (Jan. 2, 2008) (docket no. 5).

Porter's direct appeal of his convictions concluded on December 30, 2003, when the Michigan Supreme Court denied his application for leave to appeal. After his convictions became final, petitioner filed collateral attacks on the convictions and legal actions contesting the Parole

16

Board's decisions. Those actions included: a petition for a writ of habeas corpus contesting his first parole denial on February 18, 2004; a petition for writ of habeas corpus contesting his conviction on April 12, 2004; a state habeas action in the Muskegon County Circuit Court on July 18, 2005; and a state habeas action directly in the Michigan Court of Appeals on or about June 20, 2006. Under these circumstances, the record reflects that petitioner was engaged in protected activity at the time his parole was denied on June 6, 2005 and April 4, 2007. Accordingly, petitioner has met the first element of a retaliation claim. *Thaddeus-X*, 175 F.3d at 394. In its previous opinion, the court determined that a parole denial is an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct. *See* Opinion at pp. 4-5 (Jan. 2, 2008) (docket no. 5). Therefore, petitioner has met the second element of a retaliation claim. *Thaddeus-X*, 175 F.3d at 394. The last remaining issue is whether the adverse action was motivated, at least in part, by petitioner's protected activity. *Id.*

The record reflects that the Parole Board's second and fourth decisions denying parole were supported by a number of considerations unrelated to petitioner's litigation activities including: the assaultive nature of the crime (the intent to permanently injure the victim; the injury to the victim; the touching or discharge of a weapon); petitioner's denial of the offense; petitioner's history of violent misdemeanors; and petitioner's long standing history of substance abuse. The Parole Board departed from the parole guidelines as to the second denial because petitioner was involved in a cold-blooded shooting of another individual, the Parole Board did not have evidence that petitioner had gained insight into his assaultive behavior, and petitioner posed a risk to the public. The Parole Board departed from the parole guidelines as to the fourth denial because petitioner did not want to discuss his involvement in this offense (although he mentioned that the

17

case was still under appeal), and as a result, there was no way that petitioner's risk could be assessed. His risk remained high and these circumstances did not support positive Parole Board action.

Porter presented affidavits executed by him and his mother in support of his petition. Petitioner's affidavit states that at his first parole interview in December 2003, the interviewing Parole Board member asked him if he agreed with the Parole Eligibility Report (PER). Porter Aff. at ¶¶ 1-3 (docket no. 48-4). Petitioner responded, "No, I'm in appeal." *Id.* at ¶ 4. The interviewer stated, "You're not sorry . . you're appealing. You didn't do anything wrong . . . you're appealing." *Id.* at ¶ 5. At his second Parole Board interview on June 6, 2005, petitioner did not agree with the PER, stating that he was "still in appeal." *Id.* at ¶¶ 8-10. Petitioner stated that his proceedings were pending in federal court. *Id.* at ¶¶ 11-12. The Parole Board interviewer stated, "I understand you have to do what you have to do. But we are not going to let you out of here as long as you are appealing your conviction" and that he could expect a parole denial. *Id.* at ¶¶ 13, 15. Petitioner was denied parole on June 6, 2005. *Id.* at ¶ 16. In her affidavit, petitioner's mother, Ivory J. Porter, stated that she attended the parole interview on June 6, 2005. Ivory J. Porter Aff. at ¶¶ 1-5 (docket no. 48-4). At this time, the interviewing Parole Board member stated that "The patole [sic] board is not going to release let [sic] you go as [] long as you're appealing your case.["] *Id.* at ¶ 11.

Petitioner's retaliation claim fails. As an initial matter, this court is not bound by statements set forth in the self-serving affidavits submitted by petitioner. *See, e.g., McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007) (in resolving habeas case, court observed that a reasonable juror surely could discount [a petitioner's] own testimony in support of his own cause, and the affidavit of his mother, as she had a significant personal stake in supporting his claims,

noting that such affidavits "add[] little in the way of quality" to the petitioner's claims); *Riggins v. Norris*, 238 F. 3d 954, 955 (8th Cir. 2001) (noting that court is "certainly entitled to disbelieve [defendant's] self-serving testimony"); *Snyder v. Grayson*, 872 F.Supp. 416, 420 (E.D. Mich.1994) ("it is well established that a self-serving habeas affidavit is not sufficient to establish a constitutional violation"). For this reason, petitioner's self-serving affidavits are insufficient to establish retaliation.

Furthermore, even if the Parole Board interviewers had made the statements ascribed to them in petitioner's affidavits, the statements did not indicate retaliatory motive. In his first, second, third and fourth interviews with the Parole Board, petitioner failed to comprehend the seriousness of the crime, refused to accept responsibility, expressed little or nor remorse, did not demonstrate any insight into his assaultive behavior, and considered himself the real victim in the case. In addition, petitioner would not discuss his involvement in the offense during the fourth parole interview. It was for these reasons that Parole Board lacked "reasonable assurance" that petitioner "will not become a menace to society or to the public safety" and denied him parole. Petitioner's direct appeal of his conviction concluded in 2003. To the extent the Parole Board referred to petitioner's subsequent "appeal" (i.e., his federal habeas action), it was in the context of petitioner's refusal to accept responsibility, his denial of committing the offense and/or his refusal to discuss the crime with the Parole Board.

Petitioner has failed to demonstrate a causal connection between his litigation and the denial of his parole. *See Bell v. Ohio Adult Parole Authority*, 23 Fed. Appx. 478, 479-80 (6th Cir. 2001) (prisoner's retaliation claim fails where there is no evidence to support his conclusion that the parole board's decisions were based on their intent to retaliate against him as opposed to being

based on the facts of his crime). Accordingly, petitioner has failed to establish that the Parole Board denied him parole in retaliation for participating in protected activity.

## V. Recommendation

For these reasons, I respectfully recommend that petitioner's motions for summary judgment (docket nos. 49 and 59) and his habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated: July 2, 2010 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge


ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).